[No. 1279. Decided June 27, 1894.]

THE CITY OF SEATTLE, *Respondent*, v. I. LIBERMAN *et al.*,
*Respondents*, D. KEELER *et al.*, *Appellants*.

APPEAL — NOTICE — EFFECT OF STIPULATION DISPOSING OF SUBJECT
MATTER OF ACTION — STREET IMPROVEMENTS — ASSIGNMENT OF
FUND DUE CONTRACTOR — LIABILITY OF CITY — ESTOPPEL.

The fact that a written notice of appeal has not been served upon
all the parties to the action is immaterial, when oral notice has been
given in open court after the rendition of judgment, and an appeal
bond given thereafter within the time required.

A stipulation, entered into after an appeal is taken, providing
for a distribution of a portion of the fund in controversy in the ac-
tion, will not deprive appellants of the benefit of their appeal, when
the stipulation itself shows that it was not intended as an abandon-
ment of the appeal. (HOYT, J., dissents.)

The acceptance by a city comptroller of orders drawn by a con-
tractor upon a street improvement fund binds the city to make pay-
ment thereof, and when the city has ignored the equities of different
claimants in the division of payments due from such fund, the city
becomes liable therefor to the party injured. (HOYT, J., dissents.)

Under a contract providing that seventy per cent. of the contract
price of the estimated amount of work upon a street improvement
should be paid monthly and the balance of thirty per cent. retained
until the completion of the work and the satisfaction of claims for
material furnished and labor performed thereon, an order drawn by
the contractor in favor of a third person for payment at the rate of
seven dollars per thousand feet of lumber, to be made according to
the partial and final estimates of the city engineer, as the work pro-
gresses, entitles such assignee to the full payment of said seven dol_
lars per thousand, when that sum is less than seventy per cent. of
the sum due under contract; and does not restrict the assignee to
seventy per cent. of the seven dollars per thousand.

The fact that the payee of an order on a street improvement
fund accepts without protest but seventy per cent. of the amount
he is entitled to, does not work an estoppel, when he supposes that
is all he is entitled to under the estimates made by the city engineer
as the work progresses.

*Appeal from Superior Court, King County.*

*Richard Saxe Jones*, for appellants.

*W. T. Scott, F. A. Steele, Ira Bronson*, and *Allen & Powell*, for respondents.

The opinion of the court was delivered by

SCOTT, J.—A motion was made to dismiss this appeal on the ground that all of the parties to the action had not been served with notice thereof, which is based upon the fact that a written notice was given which had not been served upon all of the parties entitled to service under the statute. It appears, however, that an oral notice of appeal was regularly given in open court after the rendition of judgment, and an appeal bond was given within the time required thereafter. Consequently the written notice was superfluous, and the motion is denied.

This action was begun October 5, 1893, by the city of Seattle against I. Liberman and others to determine the conflicting claims of fifty or more claimants to funds in the hands of the city devoted to a street improvement.

On September 12, 1892, the respondent, the city of Seattle, through its board of public works, entered into a contract in writing with the defendant, I. Liberman, whereby said Liberman agreed to grade to the established grade Broadway and De Forrest streets in said city from Yesler avenue to the south line of Oak street, and construct sidewalks on both sides thereof between said points, as ordered by an ordinance of said city, approved August 23, 1892. The city agreed (in the language of the contract) "to pay said Liberman for said improvement at the following rates, to wit: Earth work per cubic yard fourteen and one-half cents (14½); rock per cubic yard seventy-five cents (75c.); sidewalks, box drains and cross-walks, including nails and spikes, ten and twenty-five one-hundredths dollars ($10.25) for each thousand feet board measure of

lumber therein; clearing and grubbing, per acre, sixty-five dollars ($65)."

In said contract it was further provided as follows:

"All said payments shall be made by warrants payable only from the local improvement fund, district No. 34, of Seattle, provided for by said ordinance No. 2309, and not otherwise, and said party of the second part agrees to look solely to said fund for the payment for said improvement, except that so much of said contract price as is the cost of improvement of street crossings shall be paid by said city from its general road fund, to wit, the street fund.

"Warrants shall be issued as follows: On or before the fifteenth day of each month during the progress of the work warrants shall be issued for seventy (70) per cent. of the contract price of the estimated amount of said work returned by the city engineer as having been done during the preceding calendar month, and the balance of said contract price, being thirty (30) per cent. thereof, shall be retained to secure the payment of laborers who shall have performed work thereon, and material men who shall have furnished materials therefor; and all such laborers and material men shall, for thirty days after the work has been completed, have a lien upon said thirty (30) per cent. so reserved for labor done and materials furnished, which lien shall be senior to all other liens, whether by judgment, attachment or contract; and said improvement shall not be deemed completed until the board of public works shall have filed with the city clerk a statement signed by a majority of them, declaring the same has been completed.    But neither said statement nor any acceptance of said work by said board shall prevent said city from thereafter making any claim for uncompleted or defective work when the same is discovered.

"In case no lien is claimed against said thirty (30) per cent. so reserved during said thirty days, and no uncompleted or defective work shall have been discovered and reported by the city engineer during said time, then warrants for said unpaid balance shall be issued at the expiration of said period; but in case notice of any such lien is given the city during this period, by or on behalf of any

person claiming such lien, or in case the city engineer shall report any claim of the city by reason of uncompleted or defective work, then the amount of all liens so. claimed shall be reserved by said city until final determination of such lien claims, and the cost of perfecting such uncompleted or defective work shall be retained until such uncompleted or defective work shall have been perfected or arranged to the satisfaction of the board of public works, unless otherwise ordained by the city council. No warrants shall be issued in any event for any part of said thirty (30) per cent. so reserved until said party of the second part shall have filed with the city comptroller a certificate signed by the city engineer stating that said period of thirty days has elapsed and that no uncompleted or defective work has been discovered for which said city makes claim.

"This contract is made and entered into with reference to the charter of said city as amended and now in force, and the ordinances of said city now in force; and the provisions of said charter and ordinances relating to the subject matter of this contract are hereby made a part hereof, with the same effect as if said provisions were herein incorporated and expressly set forth."

Liberman entered upon the work in accordance with the contract, and after some delay completed it, and it was accepted by the board of public works on August 22, 1893.

The contractor's compensation for the construction of sidewalks, box drains and cross-walks was to be measured by the quantity of lumber used, the cost of the nails, spikes and other material and all labor of preparing, laying down and completing the structures being included in the $10.25 per thousand feet of lumber used. In order to purchase the lumber needed to carry out his contract, Liberman gave to J. L. Taylor, one of appellants, the following order.

"Seattle, Wash., February, 25, 1893.

"*J. M. Carson, Esquire:*

"Please pay J. L. Taylor for lumber used in the improvement of Broadway, for sidewalks, box drains, culverts or

retaining walls, at the rate of seven dollars ($7.00) per thousand feet.

"Said lumber is estimated to amount to about 570,000 feet, which, at $7.00 per M. would be $3,990.00, and for this sum, more or less, according to the city engineer's estimate this order is given in favor of J. L. Taylor; payments to be made according to the partial and final estimates of the city engineer as the work progresses.

"Order for three thousand nine hundred and ninety-nine dollars, more or less.            I. LIBERMAN."

"I hereby release the above amount only from order given me by I. Liberman for the full amount due and to become due on Broadway.            J. T. NELSON."

This order was endorsed at the comptroller's office as follows:

"I. Liberman to J. L. Taylor and release of amount of lumber at $7.00 per tho. by J. T. Nelson. Release by Nelson to Fischer & Macdonald. Filed March 11, 1893."

There had been a previous order to J. T. Nelson, but on March 15, 1893, Nelson released all claims on the fund.

On the 20th day of March, A. D. 1893, Fischer & Macdonald caused to be filed with the city comptroller an order as follows:

"SEATTLE, WASH., March 20, 1893.
"J. M. Carson, City Comptroller, City of Seattle:
"Please pay to Fischer & Macdonald all money now due or which may become due on Broadway and De Forrest street contract.            I. LIBERMAN."

Indorsed: "Filed March 20, 1893,
"J. M. CARSON, Compt."

Fischer & Macdonald were a wholesale grocery firm in Seattle, and this order was given them as security for groceries and money furnished Liberman by them. The rights of appellant Taylor and respondents Fischer & Macdonald were fixed by these orders. Later on Taylor assigned his claim to appellant Keeler. On September 1, 1893, Fischer & Macdonald filed the following instrument:

"*J. M. Carson, City Comptroller:*

"For and in consideration of the sum of four thousand ($4,000) dollars, to me in hand paid by Fischer & Macdonald, I hereby sell, assign, transfer and set over to said Fischer & Macdonald all of that certain claim against the city of Seattle, a municipal corporation in King county, Washington, amounting to about fifty-six hundred ($5,600) dollars, being a balance due me upon a contract for the grading and sidewalking of Broadway and DeForrest streets in the said city of Seattle, together with all sums of money due me from said city, and authorize said Fischer & Macdonald to receive from said city said sum and receipt therefor. Witness my hand and seal this 1st day of September, 1893.                    I. LIBERMAN."

During the progress of the work monthly estimates were returned by the city engineer allowing the contractor for seventy per cent. of the work completed in each month. In making payments to Keeler under said order, it seems some question was raised as to whether he was entitled to the full rate of $7 per thousand for lumber furnished each month out of the money coming to the contractor for that month, or whether he was to get but seventy per cent. of the $7 per thousand out of the partial payments as the work progressed.

The first construction put upon this order by the comptroller was to the effect that Keeler was entitled to only seventy per cent. of the $7 per thousand on the partial estimates, the remaining thirty per cent. of the price of the lumber as called for by the order to await the final estimate. Payment was made to Keeler in the month of March for the February estimate, and in the month of April for the March estimate, in accordance with this construction. In the month of May the comptroller departed from this construction of the order and assumed that Keeler was entitled to the full $7 per thousand for lumber delivered so long as there was sufficient money due the contractor

to make the full payment, and consequently the payment made in May for the April estimate gave him full payment for the lumber delivered during the preceding month; and also applied this new construction to former payments and paid the amount that had been held back on the lumber furnished in February and March. The result was that the May payment paid in full for all lumber furnished up to May first. In making payment in the month of June on the May estimate, the comptroller returned to his original construction of the order, and again made his new construction retroactive, paying only such sum as would make the total amount of money then and theretofore paid equal to seventy per cent. of the lumber bill up to that time. The reason given for returning to the first construction is that Fischer & Macdonald, who held the second order, insisted that the first construction was the correct one, and they claimed the balance under their order and assignment. This construction was thereafter adhered to, and in pursuance thereof payments were made in July for the June estimate and in August for the July estimate. The August estimate was combined with the final estimate, as the work was completed and accepted on August 22. No payment was made upon this estimate prior to the decision of this case in the superior court. During the progress of the work it seems there was paid, either to Liberman or holders of orders from him, the full seventy per cent. of the contract price of work then completed up to August, sums not being paid to Keeler being paid to Fischer & Macdonald, or to such persons as Liberman and Fischer & Macdonald directed.

The full cost of the improvement under the contract, including earth work, rock work, clearing, grubbing, sidewalks and other structures, was $14,619.07. Under the contract and charter thirty per cent. of this sum was reserved "to secure the payment of laborers who shall have

performed work thereon and material men who shall have furnished materials therefor.''    At the time of the commencement of this action the city had on hand the whole of this ''thirty per cent. reserve,'' viz., $4,385.72, and also seventy per cent. of the work done in August (no partial estimate for said month having been separately rendered), which last amounted to $1,213.15.    During the thirty days following the completion and acceptance of the work a large number of time checks and other claims were filed with the comptroller by various holders claiming liens for labor performed and material furnished on the work.    There was also a contest between Fischer & Macdonald and appellants Taylor and Keeler, regarding their priorities in the fund.    The amount of the various claims exceeded the amount of the fund remaining in the hands of the city, and the validity of the time checks and so-called liens was in doubt.    About sixty persons were claiming an interest in the fund and the rights of all were contested by one or more of the others.    Under these circumstances the city brought this action in the nature of interpleader against all persons claiming an interest.

The city claimed to be a party without interest and only asked that the fund be properly distributed.    Taylor and Keeler claimed that under their order they were entitled all along to $7 per thousand feet for all lumber furnished; that there was furnished 520,092 feet amounting to $3,-640.64; that there became due to the contractor Liberman for such lumber $5,330.94; that the city had a right to retain therefrom only thirty per cent. of the amount due the contractor, leaving $3,731.66 due in money as the work progressed, which was more than sufficient to pay their claim; that by accepting and filing the order from Liberman to Taylor, and the assignment thereof from Taylor to Keeler, and paying money thereunder, the city had accepted said order and assignment, and was bound

by the terms thereof, and they demanded judgment against
the city for $1,550.67 and interest thereon.    The various
lien claimants contended that they were each entitled to
share *pro rata* in the thirty per cent. reserve as lienors
under the contract and charter.    Fischer & Macdonald de-
nied that any of their co-defendants had a lien on the thirty
per cent. reserve, and set up affirmatively that they had
also filed certain labor claims; that they had an assignment
of all moneys due Liberman on his contract, and should
be allowed the entire fund in the hands of the city until
their claims against Liberman to the extent of $3,800
were satisfied.    The city, by a reply, put in issue the conten-
tion of appellants Taylor and Keeler, and further pleaded
an estoppel against them in consequence of Keeler's having
accepted the payments as made without protest during the
pendency of the work.    Both the city and appellants
Taylor and Keeler replied to the answer of Fischer &
Macdonald, putting in issue the matters asserted by them.
The cause was tried on these issues, and the lower court
adjudged that the city should pay the various lien claim-
ants the amount of their claims, and also pay to Keeler the
seventy per cent. of the $7 per thousand feet for lumber
furnished in August, and distribute the balance of the
fund between Keeler and Fischer & Macdonald, giving to
Keeler $27\frac{73}{100}$ per cent., and to Fischer & Macdonald $72\frac{27}{100}$
per cent., said payments being in proportion to their re-
spective claims.    Taylor and Keeler appealed therefrom.

The first question to be disposed of is the claim on the
part of the respondents that the appellants should be held
to have abandoned their appeal in consequence of a stipu-
lation entered into after the appeal was taken.    Such stip-
ulation is as follows:

"It is hereby stipulated and agreed by and between all
parties in the above entitled action, through their respect-
ive attorneys, that said city, the plaintiff, pay forthwith to

each person to whom any money is payable under the final judgment and decree rendered herein by the superior court seventy-two per cent. of the full amount payable to such persons, respectively, by the terms of said judgment and decree, said payment to be made either to said parties or to their attorneys, said sum to be paid as agreed by this stipulation amounting to $4,031.18, which sum is to be paid ratably from the street fund of said city and the local improvement fund district No. 34, as stated in the complaint. And it is further agreed that payment of said sum of $4,031.18 to the several persons aforesaid shall be deemed and held for all purposes to have been properly paid and disbursed by the plaintiff, so far as any liability of the plaintiff is concerned, and no further, and shall extinguish to that extent the liability of the plaintiff on the contract in the complaint mentioned.

"It is further stipulated and agreed that the appeal bond given by said defendants Taylor and Keeler shall serve also as the appeal bond for such other defendants as may join in said appeal in the manner provided by law and that no other bond shall be required by the other defendants so joining in said appeal. This stipulation shall be filed in duplicate in the superior court and in the supreme court, and the judgment of the supreme court, if any appeal be completed and decided, shall not in any event hold the plaintiff liable for moneys paid out under this stipulation."

It appears that the amount stipulated was paid by the city to the various claimants, appellants and Fischer & Macdonald being included. We do not think this stipulation should be given the effect of depriving appellants of the benefit of their appeal. It clearly was not intended to have such an effect. It is apparent therefrom that the appellants at least understood their appeal should not be prejudiced thereby, and there was nothing upon the face of the stipulation to indicate that the respondents had any other intention. In fact, the stipulation provided for the maintenance of the appeal in stipulating as to the bond,

etc. We know of no reason why it should be given any different effect than the parties intended it should have.

The city contends that it should not be held liable in any event beyond the amount of the fund devoted to the improvement in question, and that the controversy is really between appellants and Fischer & Macdonald, and if appellants are entitled to any more money they should recover the same from Fischer & Macdonald and not from the city, on the ground that if the city had not paid to Keeler the full amount he was entitled to under the order given to Taylor, it had paid the same to Fischer & Macdonald; that Fischer & Macdonald are parties to the suit, and are not shown to be insolvent, and that the court is in a position to do justice between all the parties. This last claim is here referred to as it is, in a measure, connected with the claim that the appellants have waived their appeal by entering into the stipulation in consequence of having consented thereunder that certain moneys should be paid to Fischer & Macdonald. The relief sought by appellants, however, was against the city only. It is not clearly apparent what the additional sum paid to Fischer & Macdonald under the stipulation was for, as it seems that the amount demanded by them was based upon several different claims. If the particular amounts to which Keeler was entitled, however, were paid to Fischer & Macdonald, such payments were made prior to this time, during the pendency of the work. The city was a party to this stipulation, and at the time it entered into it was fully advised of appellants' claim in the premises, and is bound as much as any of the other parties thereby.

To hold that the stipulation would deprive appellants of the benefits of their appeal would be to hold that parties pending a suit cannot stipulate as to the disposition of a part of the subject matter over which there may be no controversy — and it is not certain that there was any contro-

versy in this instance directly between appellants and
Fischer & Macdonald as to the sum paid — and expressly
preserve their right of appeal.   We are of the opinion
that a stipulation of the kind may be entered into and the
right of appeal maintained, and we do not think that the
further claim upon the part of the city, hinged upon this,
that appellants should be compelled to look to Fischer &
Macdonald, is well founded.   There is no more reason why
appellants should be compelled to look to Fischer & Mac-
donald than there is that the city should look to them, nor
as much, for there were no contractual relations between
appellants and Fischer & Macdonald, and there were be-
tween each of said parties and the city.

It appears that certain moneys are yet in the hands of
the court, and it may be that the court will be in a posi-
tion to protect the city in the premises, at least in a meas-
ure, by retaining any further moneys, if any, which might
be due to Fischer & Macdonald, and were it not for the
stipulation it might be that the city could recover the ex-
cess of moneys, if any, paid to them.   We are of the opin-
ion, however, that the city, having stipulated to pay Fischer
& Macdonald the additional sum after the decree was ren-
dered, cannot hereafter ask to recover the sum paid nor
any part thereof.

The laborers' liens and the amounts adjudged to them
under the decree are not contested here, and consequently
will remain as fixed by the lower court.

It is further contended by the city and Fischer & Mac-
donald that Taylor and Keeler were only entitled to seventy
per cent. of the seven dollars per thousand feet for lumber
called for by the order, and that this is apparent in conse-
quence of the following language used in said order:  "Pay-
ments to be made according to partial and final estimates
of the city engineer as the work progresses."   But we do
not so construe it.   Liberman was entitled under his con-

tract to more than that amount of money per thousand feet for lumber furnished, as the work progressed, and the effect of the order to Taylor was to entitle him to the full amount called for. This was the evident intention of the parties as we construe the order, and there is nothing, either upon the face of the order or aside from it, to show any different intention. But conceding that the clause referred to should have the effect of postponing payment for thirty per cent. thereof, Keeler was entitled to this balance upon the completion of the work, as this additional thirty per cent. was no part of the original thirty per cent. reserved under the contract, and did not pass to Fischer & Macdonald.

It is further contended by the city that the comptroller had no authority to bind the city by an acceptance of this order, but conceding this we do not think it alters the situation.

"An order to pay out of a specified fund has always been held to be a valid assignment in equity and to fulfill all the requirements of the law." *Christmas v. Russell*, 14 Wall. 69, 84.

And this holds good although the fund is not actually in being, if it will in due course of things arise from a contract or arrangement already entered into when the order was given. 3 Pomeroy, Eq. Jur., § 1283.

Consequently this order to Taylor operated as an assignment of Liberman's claim to the extent of seven dollars per thousand feet for the lumber furnished, due from the first payments as the work progressed, and the city had notice of it and was bound thereby, regardless of any acceptance by the comptroller.

It is also contended by the city that appellants are estopped from making a further claim against the city in consequence of having accepted the payments as made without protest, at the time they were made. It is contended

that Keeler understood that he was being paid but seventy per cent. of the seven dollars called for finally, and that he consented thereto.    We have examined the proof in relation to this claim, and we do not think that it is established.    It should be borne in mind that this order was given to Taylor as security only, and it does not appear how Keeler obtained it unless it may be inferred from the fact that he was engaged in the brokerage business and was dealing in such claims, and if so it is fair to presume that he only paid therefor in proportion to the amount he received, and therefore was not greatly interested.    He testified that he had no knowledge that he was being paid but seventy per cent. of the seven dollars called for by the order when the payments were made; that he supposed he was being paid the full amount called for by the order according to the quantity of lumber which had been used at the time the payments were made as estimated by the city engineer; that he had confidence in the city's officer who made the payments, and who informed him from time to time what he was entitled to, and made the payments.    The only fact upon which an estoppel could be based is that Keeler did not determine for himself the amounts to which he was entitled, but accepted the payments as made without protest, taking it for granted that he was getting all that he was entitled to.    This is not sufficient.    He had no knowledge that he was being paid any less, and he had a right to rely upon the plain import of his order, and should not be prejudiced because he accepted the payments as estimated by the city's officer, under the circumstances; and we think that there was no estoppel in the premises.

The judgment is reversed, and the cause remanded with instructions to the lower court to enter a judgment in favor of appellant Keeler against the city for the balance of the moneys called for by the order in question, in

accordance with this opinion; and for any further proceedings deemed allowable or called for, not inconsistent herewith. The costs of this appeal will be recovered of the city and of Fischer & Macdonald. No costs will be allowed against the other respondents, but they will be required to bear the costs of their own brief, as the same was unnecessarily filed.

DUNBAR, C. J., and ANDERS, J., concur.

STILES, J. (*concurring*).—I concur, with the reservation that the ground of recovery against the city is that the contract with Liberman segregated the cost of the lumber, and made it payable independently, as though it alone were the subject of the agreement.

HOYT, J. (*dissenting*).—I am unable to agree with the conclusion to which the majority of the court have arrived, for the reason—*First*, That by joining in the stipulation for the distribution of the money, the appellants waived their right to further prosecute the appeal. I understand the rule to be that a party cannot accept any of the benefits of a judgment, and at the same time prosecute his appeal therefrom. This rule is so well settled that I deem it unnecessary to cite any authorities in support thereof. That the appellants derived certain benefits from the judgment of the court by virtue of the stipulation referred to, there can be no doubt, and I think that after signing the same they could not further prosecute their appeal.

*Secondly*, I am unable to agree with what is said by the majority as to the relations which were established between the city and appellants Keeler and Taylor, and the respondents Fischer & Macdonald, by reason of the orders given by the contractor. These orders were upon the comptroller of the city, and were in no manner acted upon by its common council. The comptroller is the agent of the city so far as his duties are provided by law or its ordi-

nances, but no farther, and there has not been called to the attention of this court any provision of such law or ordinances giving him any authority to accept such orders or in any manner to contract in behalf of the city. It may well be doubted whether or not the city would be bound to recognize any order given by a contractor, even if it was accepted by its common council, for the reason that to make such acceptance was not within its powers, and it seems clear that the comptroller, who is a purely ministerial officer, could not by his action in that behalf in any manner bind the city. That the city was not bound to recognize the orders of the contractor is so clear that I do not understand appellants to contend to the contrary.

It follows that if the city was bound at all it was by reason of the acceptance of such orders by the comptroller. But, since he was given no authority to do this, it is impossible to see how the city could be affected by his action in that regard. So far as he acted upon the orders, and made payment to the payees named therein, the contractor would doubtless be bound by reason of the doctrine of estoppel; but such action on his part could not establish any liability on the part of the city. The opinion of the majority seems to concede that unless the city had assumed some contractual relation with appellants and said Fischer & Macdonald it would not be liable to them. If this is so, before they could recover they would have to show a binding contract upon the part of the city, and since the common council is the only body clothed with power to authorize such a contract, authority from it should have been shown before it could be assumed that any contract had been entered into. Under the provisions of the charter of the city of Seattle the comptroller certainly had no power to enter into contracts of this kind so as to bind the city, unless authorized by the common council, and no such authority having been shown, his acts, even if sufficient to show an

intent to make a contract on the part of the city, could in no manner bind it.

There is another reason why the appellants should not have the relief which is awarded them by the opinion of the majority. The city practically proceeded *in rem* against a certain definite sum of money which was in its possession, and asked the court to make distribution thereof. This being so, the subject matter of the suit was only such sum of money, and the court was without jurisdiction to award any other judgment than one disposing of such fund.

In my opinion the judgment should be affirmed.