[No. 1557.  Decided February 8, 1895.]

LAURA J. ACKLEY, *Appellant*, v. CLINTON A. BURCHARD, *Respondent.*

HABEAS CORPUS — DIVORCE OF PARENTS — CUSTODY OF CHILDREN.

Where, after the rendition of a decree of divorce in which the custody of the minor children has been awarded to the mother, a stipulation for the modification of the decree so as to award custody to the father has been entered into by the father and mother, and possession of the children given to the father under such stipulation, the father·is rightfully entitled to the children, although in fact the modification of the decree has never been secured.

*Appeal from Superior Court, Kittitas County.*

*Mires & Warner*, and *Herren & Hubbell*, for appellant.

*Reynolds & Stewart*, for respondent:

The weight of authority in this country sustains the position that a parent can, by agreement, surrender the custody of an infant child to another so as to make the custody of that other legal. *Brooke v. Logan*, 2 Am. St. Rep. 184; *Clark v. Bayer*, 32 Ohio St. 299 (30 Am. Rep. 593); Tyler, Infancy, 284; *Bonnett v. Bonnett*, 16 N. W. 91 (47 Am. Rep. 810); *Whalen v. Olmstead*, 15 L. R. A. 594; *Green v. Campbell*, 35 W. Va. 698 (29 Am. St. Rep. 843); *Mercein v. People*, 35 Am. Dec. 663.

The opinion of the court was delivered by

DUNBAR, J.—On May 18, 1891, the petitioner and Clinton A. Burchard, the respondent, were divorced by decree of the superior court, and in said decree the care and custody of the minor children, Mary Ella Burchard and Mattie Eva Burchard, who are the subjects of this petition, were awarded to appellant, petitioner herein.  The appellant afterwards married one

H. C. Ackley, and sues out this writ in the name of Laura J. Ackley. On May 4, 1893, the respondent, who lives in Lewis county, went to Ellensburgh and employed Pruyn & Ready, a firm of lawyers, to obtain an order *nunc pro tunc*, in the case of Burchard *v.* Burchard, the case above referred to, modifying the original decree therein to the extent of giving the custody and control of said children to respondent Burchard.

It seems that Pruyn & Ready had been appellant's attorneys in the divorce proceedings, and expressed some doubts as to the propriety of an employment to attempt to disturb the decree in that case. They, however, resolved the doubt in favor of the employment, and told the respondent that, in some recent case to which appellant was a party, such damaging testimony had been elicited against her that they were satisfied a modification of the decree could be obtained. In fact, they thought that appellant, rather than have the testimony reproduced, would consent to relinquish the possession of the children. At all events, they received a fee of forty dollars from respondent, and Ready went to see the appellant and brought her down to the office of Pruyn & Ready for a conference. The result of said conference was that an agreement in writing was executed whereby the custody of the minor children was to be given to respondent.

The respondent then took charge of the children and took them to his home in Lewis county, where they remained in his undisputed possession until about a year afterwards, when petitioner clandestinely took them from the possession of the respondent. An arrest for kidnapping followed. The respondent again obtained possession of the children, and this writ was sued out to obtain their possession.

Respondent, answering, set up the agreement which

9—11 WASH.

it was alleged had been lost or misplaced through the negligence or carelessness of attorneys Pruyn & Ready, or through their collusion with the appellant; and the court, upon the trial, refused to make an order modifying the decree, but finding that the custody of the children was rightfully in the father, refused the writ; and from this order of the court this appeal is taken.

There is some conflict in the testimony in this case, the respondent swearing positively that the agreement executed was to the effect that he was to have the permanent care and custody of the children, while the appellant and her husband swear that he was to have the care and custody of the children until the next July. While the testimony of Pruyn & Ready on their direct examination rather tends to strengthen the contention of the appellant, their cross-examination shows that it must have been their understanding of the contract which was executed that the permanent custody of the children was given to the respondent. Ready swears that he does not think that they would have charged the respondent forty dollars simply for bringing about the conference which was brought about through his instrumentality. Pruyn's testimony is to the effect that he remembers of some kind of a stipulation made and entered into between the appellant and the respondent, and that he does not know where the paper is at the present time, although he has made due and diligent search for the same; that to the best of his recollection the contents were that the decree in the case of Burchard v. Burchard, a divorce suit, should be modified so that Clinton A. Burchard could take the children mentioned in the decree for a time and that the plaintiff should have the children for a while, and that they should be taken back and forth between the petitioner and respondent

as could be amicably agreed upon; did not think that it was to be continual—that the respondent was to have the absolute custody and control of said children; that he intended to present the said stipulation to the court, but the matter was overlooked in some manner, until it was lost; that Mrs. Ackley was very much excited during the conference, so much so that she fainted, and that after recovering she consented to let the children go in accordance with the stipulation concerning which he had before testified. He, however, admitted, on cross-examination, that he had stated to Mr. Stewart, one of Burchard's attorneys, on May 20, 1894, in the city of Tacoma, that he never was more surprised in his life than when he heard that Mrs. Ackley had stolen the children, and thought that she must be crazy to think she had any right to the children. This testimony is, of course, in flat contradiction of the testimony in chief, that the custody of the children given to Burchard was only a temporary custody, and renders the testimony of attorney Pruyn practically useless, except to the uncontradicted fact that a stipulation had been drawn up, signed and executed, and that he had intended to present the same to the court.

The testimony of Mrs. Ackley is to the effect that the stipulation provided only for the temporary custody of the children, and the same is substantially the testimony of H. C. Ackley, her husband; while the testimony of the respondent is that he paid these attorneys this fee of $40, not for the purpose of obtaining a temporary control of the children, for that was not the object of his visit to Ellensburg, but for the purpose of obtaining a permanent modification of the decree in the divorce suit; to the end that the care and control and custody of the children should be awarded to

him instead of to the appellant; that such were the provisions of the stipulation; and that, relying upon the fidelity of the attorneys thus employed and paid, he presumed that the same would be properly entered in the court by them, as under the contract of their employment they were to pay all the court fees; and that he never knew that the appellant made any claim to the possession or control of these children until the following October, when she appeared and demanded their possession from his daughter.

The testimony of H. C. Ackley is disputed by his own letters. One of these, written to respondent May 7, 1893, is as follows:

"*C. A. Burchard, Esq., Ainsley, Wash:*

"DEAR SIR—I am very anxious to hear from you in regard to the little girls. I believe you will be kind enough to let me know how and when you got through. How are you getting along? Are they homesick? I trust you will be kind enough to let them come back soon to see us. You must know by this time that all the letters that have been written to you from this place are false; not one word of truth in them. The low down conspirators have all left this place, as I suppose you know very well. They did not have the cheek to face the public here after doing this cruel deed. I could not send the little girls' clothes with them, for you know we didn't have much time to get them ready, and it was not a very pleasant task for us; but we will have them all saved for them when they come back to see us. Please write and tell me who takes care of them, and whether they go to school or not. Tell the little orphans that I would like to come and stay with them but that is impossible. With this I close, hoping to hear from you soon.

                    With great respect,          H. C. ACKLEY."

The witness also admitted that he had written a letter to Pearl Burchard, the daughter of respondent, in

August, 1893, about the children. The letter was as follows:

"ELLENSBURG, WASH., Aug. 22, 1893.

"*Miss Pearl Burchard, Ainsley, Wash.:*

"Please allow me to introduce myself as H. C. Ackley, your step-mother's husband. Of course you know very well why I ask to correspond with you. We would like to hear from little darling babies, and I most sincerely believe you will write to me in regard to them. Now, Pearl, neither Alice or her mother know that I have written to you, and if you wish I will not let them know anything about it. If you will kindly answer this I will write more the next time. If we ever become acquainted you will find me a true friend to all who treat me as such. So please answer this little note and oblige,       Yours very respectfully,

H. C. ACKLEY."

It will be observed that the letter to Burchard does not indicate that the children are to return permanently to their mother, but is a request that they may come back on a visit, when he promised to have their clothes all in readiness for them; and the letter of August 22, 1893, directed to Miss Pearl Burchard, is written nearly two months after the time which the witness swears was the time at which the children were to be returned, viz., July 4, 1893; and not a word is said concerning their not having returned, or asking that they be returned.

Considering the testimony as a whole, we are of the opinion that the stipulation provided for a modification of the judgment as contended for by the respondent, and without any reflection upon the character of the mother—for there is no proof in this case regarding her reputation, one way or the other—but from the fact that she had a right to stipulate that the decree should be modified, and that we believe the testimony shows that such stipulation was executed, the father

was in the rightful possession of the children; and, that being the case, the writ of habeas corpus would not lie.

The judgment of the court will, therefore, be affirmed.

Hoyt, C. J., and Scott, Gordon and Anders, JJ., concur.