[No. 10646.   Department Two.   November 20, 1912.]

FIRST NATIONAL BANK, *Appellant*, v. THE CITY OF SEATTLE
et al., *Respondents.*[1]

MUNICIPAL CORPORATIONS—PUBLIC WORK — CONTRACTS — PERFORM-
ANCE OR BREACH—EXTRAS—EVIDENCE—SUFFICIENCY.   In an action
against a city on a contract for laying a sewer, the plaintiff is not
entitled to recover for extra work through a change of grade, re-
quiring the relaying of pipe, where it appears that the pipe had to
be relaid because out of alignment in violation of the contract, and
the change of grade was at the contractor's request and did not call
for extra work under the plan under which he submitted his bid;
especially where supplemental contracts waived all the extras con-
templated by the parties at the time the work was done, and no
claim for extras was made as required by a stipulation in the con-
tract that such extras must be submitted previous to the final ac-
ceptance.

SAME.   The fact that the city allowed a claim for extras for re-
laying part of the pipe, does not entitle the plaintiff to a claim for
extras for laying the balance.

SAME—CLAIMS OF LABORERS—RIGHT TO BALANCE RETAINED.   As be-
tween an assignee of a contractor, and a surety company guarantee-
ing labor claims, under a city contract for public work providing that
70 per cent of the amount earned should be paid the contractor as the
work progressed, and 30 per cent retained by the city to secure the
payment of laborers and materialmen, any balance due to the con-
tractor on the completion of the work after deducting 30 per cent
must be applied to discharge unpaid labor claims in excess of the
30 per cent retained by the city for their security, where the con-
tractor agreed to pay all such claims, and that the city might with-
hold all payments until satisfied that all wages were paid, and the as-
signment recited that it was not valid against any claim for labor
or materials.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered February 2, 1912, in favor
of the defendants, in an action on a contract for public work.
Affirmed.

[1]Reported in 127 Pac. 837.

*James Kiefer*, for appellant.

*James E. Bradford* and *Howard M. Findley*, for respondent City of Seattle.

*John W. Roberts*, for respondent National Surety Company.

Morris, J.—In June, 1909, the city of Seattle awarded a contract to Paul Steenstrup, assignor of appellant, for the construction of the north trunk sewer outfall. The work to be done under this contract consisted in the extension of the sewer to deep water, a distance of about 750 feet. The general plan called for the laying of large concrete sewer pipe, the construction of a manhole, and beyond that a line of 48-inch cast iron pipe; and at the outer end of the pipe a large elbow. The total length of cast-iron pipe to be laid under the contract was 414 feet, of which Steenstrup had laid about 174 feet, when he was notified that the city would not accept his work and that the pipe beyond a designated point would have to be taken up and relaid. Soon thereafter work was suspended. The work was resumed the following June, and the grade changing from a six per cent to a 6.6 per cent grade for one-third of the distance, and an 8.5 per cent grade for the remaining distance.

The first contention of appellant, as assignee of Steenstrup, grows out of this change of grade, it being contended that such change called for additional dredging which should be allowed as an extra, together with the cost of taking up and relaying the pipe. The lower court was of the opinion that the taking up and relaying of the pipe was not occasioned by the change of grade, but because of Steenstrup's failure to comply with the requirements of his contract. It is clearly apparent from the record that the lower court must be sustained in so holding. The necessity for relaying the pipe was because they were out of alignment, caused by pumping the dirt from underneath the pipes, in attempting to calk the joints with lead wool. This pumping materially

destroyed the level of the pipe, and as they went further out, they settled more and more out of line, until in some instances they were more than three feet out of alignment. The contract provided that the pipe should be laid to a true line and grade by such means as the contractor might devise. It was therefore incumbent upon Steenstrup to so lay his pipe as to preserve a uniform grade and alignment. When he failed solely because of the adoption of improper methods in laying his pipe, the city had a right to insist upon the pipe being taken up and relaid upon a true line. The change of grade from six per cent to 6.6 per cent and greater was in no wise responsible for this additional work. It was a very immaterial matter to the city what the grade was, so long as it preserved a true line and perfect alignment. The matter of grades is manifestly important in constructing a sewer in the ordinary street, where the flow depends upon the grade; but in this instance the flow was in no wise dependent on the grade, but on the elevation of the water at the point of discharge. At this point the outlet of the sewer was forty-five feet under water at high tide and twenty-eight feet under water at low tide. The flow of water through the pipes would therefore be conditioned, not by the grade, but by the elevation of the water or condition of the tide into which it discharged, the flow increasing as the tide dropped, and retiring as the tide rose. Steenstrup himself understood this, for the record establishes the fact that the change of grade was made at his suggestion and that of his subcontractor, because they evidently assumed by so doing they would be able to lay the pipe on a better foundation, and make it easier to preserve the alignment in the plan they adopted of beginning at the outer end and first setting the elbow, and, after it had become firmly imbedded and its elevation determined, they could then determine the necessary and proper grade to connect with· the shore elevation. It also appears from the testimony of the city engineer that the actual amount of dredging was less than the amount indicated by the plans,

because as actually laid the pipe is not as deep as shown on the plans. We are, therefore, of the opinion that the change of grade, whether for the city's benefit or the contractor's, did not call for the doing of extra dredging not shown on the plan under which Steenstrup submitted his bid.

As further confirming the city's contention that Steenstrup did not at the time regard the relaying of this 48-inch pipe as an extra, and that the altered grade line was made with his consent, if not for his benefit, the record discloses that, on December 29, 1910, he entered into a supplemental contract with the city, whereby he agreed to furnish all labor and material in relaying the 48-inch pipe from station 3 plus 57 to station 4 plus 10 to conform to altered grade line, for $2,899.91. This agreement covers fifty-three feet of the 48-inch pipe. On the same day he entered into a similar agreement for placing the concrete foundation under the joints of the 48-inch pipe from station 4 plus 10 to the outer end of the sewer, for $2,117.36. This agreement covered the concrete under the joints from the end of the condemned portion of the pipe to the outer end, and was allowed by the city at the actual cost, plus fifteen per cent. It is plain to us that these supplemental agreements and allowances covered all the extras contemplated by the parties at the time the work was being done. These supplemental agreements were evidently made under a provision of the original contract providing that:

"No claim for any extras under this contract will be considered by the board of public works or city engineer unless the same shall have been submitted previous to the final acceptance of the work and passage of the final estimate."

The extras now claimed were never submitted to any one representing the city, nor was any claim made for them until this action was brought. It is immaterial to consider the reasons why the city allowed these items of extras, since no issue is here made concerning them other than appellant's claim that, since the city allowed for relaying the 53 feet

as an extra, it should be charged for laying the remainder of the pipe as an extra at the same rate. It is sufficient to say there is no supporting reason for such a contention.

The claim as against the National Surety Company is based upon the fact that the surety company gave its bond for the completion of the original contract by Steenstrup, and the question to be determined is, who is entitled to a fund of $5,730.47 now in the hands of the city as due under this contract. The contract provides that 70 per cent of the amount earned during each month should be paid the contractor as the work progressed, and the remaining 30 per cent should be retained by the city to secure the payment of laborers and materialmen. It is admitted that this fund of $5,730.47 represents the balance due Steenstrup under this 70 per cent provision of the contract. The entire 30 per cent having been paid out by the city, to lien claimants, appellant contends that, under its assignment from Steenstrup, it is entitled to this fund as against laborers and materialmen as a payment due the contractor, and that all sums belonging to this 70 per cent fund belong absolutely to the contractor, irrespective of claims of laborers and materialmen, which claims can only look to the 30 per cent fund for their satisfaction. The court below found, supporting the contention of the surety company, that the total earnings under the contract must be applied to the payment of labor and material in preference to the rights of the contractor. This conclusion of the court must be sustained. Appellant has no greater right to this fund than Steenstrup. It stands in his shoes. The contract provides that "the contractor agrees to pay the wages of all persons, and for assistance of every kind employed upon or about said work, and the board of public works may withhold any and all payments under this contract until satisfied that such wages or assistance has been fully paid." Under this provision, the contractor could not claim anything due under his contract, while claims for labor and "assistance of every kind" were

unpaid and filed with the city against the amount due under the contract. In addition, the assignment itself contains this stipulation:

"This assignment is not valid as against any claim for labor, material, provisions and goods supplied and furnished in the prosecution of this contract."

Those two provisions leave no merit in appellant's contention. In *State ex rel. Bartelt v. Liebes,* 19 Wash. 589, 54 Pac. 26, it is held that a stipulation in a contract for public improvement, providing that the contractor should not be paid until all claims for labor and material had been adjusted, was a valid one, and constituted the city a trustee for the benefit of unpaid laborers and materialmen. Appellant contends that *Dowling v. Seattle,* 22 Wash. 592, 61 Pac. 709, supports its contention. There was no question involved in that case, as to the right of an assignee of the contractor to this 70 per cent fund as against valid lien claimants, under the stipulation of the contract and the assignment. There, as here, the city bound itself by its contract to withhold 30 per cent of the amount due the contractor for the benefit of laborers and materialmen. This was done. It also agreed, as here, to pay the contractor 70 per cent monthly as the work progressed. This 70 per cent payment was made by delivering a public improvement bond to the contractor, and accepting his orders in favor of various parties who had advanced money to pay for labor and materials without any knowledge on the part of the city that the contractor would default in his payments for labor and material. Here the balance of this 70 per cent fund has not been paid the contractor, and the city has knowledge of these liens for labor and materials. In that case we held that the holders of the bonds so issued were entitled to their proceeds because the payments, being justified when made, were not invalidated by the contractor's subsequent default. In that case the payment was made when due under the contract, without notice of adverse claims. In this case the payment

has not been made, and there is notice of adverse claims such as, under the language of the contract and the assignment, are entitled to preference. It is clear from that opinion that, upon the case here submitted, the ruling would have been the same as we now make, for it is there said:

"It is true that the city, by virtue of a provision of the agreement which we have hereinbefore noted [the same provision as to withholding payments until all labor and assistance is fully paid as we have quoted] *might* have withheld all payments from the contractor until it was satisfied that all just claims for labor and materials had been fully paid."

This is, in effect, the holding in *State ex rel. Bartelt v. Liebes, supra,* so that, upon the question here submitted, the two prior cases are in harmony with our present holding.

For these reasons, we sustain the lower court, and the judgment is affirmed.

MOUNT, C. J., ELLIS, FULLERTON, and CHADWICK, JJ., concur.