[No. 13338.  Department Two.  August 16, 1916.]

MARYLAND CASUALTY COMPANY, *Appellant*, v. WASHINGTON NATIONAL BANK, *Respondent*.[1]

HIGHWAYS—CONSTRUCTION—CONTRACTS—RESERVE FUND—VALIDITY. A provision in a state road contract reserving twenty per cent of the contract price for the protection of creditors, exacted by the commissioners, is binding on the surety and the county, although not required by statute, where not forbidden by Rem. 1915 Code, § 5879-9, under which the road was built.

SAME—CONTRACTS—RESERVE FUND—PARTIES ENTITLED—SURETY—SUBROGATION. Where road building contracts provide a twenty per cent reserve fund for the payment of laborers and materialmen, the surety on the contractor's bond may prevent dissipation of the fund and is entitled to be subrogated to the rights of creditors after paying their claims.

SAME—CONTRACTS—RESERVE FUND—PARTIES ENTITLED—EQUITY—PRIORITY. A bank, having loaned money to a road building contractor on assignments of all payments or warrants that may be due him, is not entitled to equities in the twenty per cent reserve fund intended for the protection of creditors, as against the surety on the contractor's bond who paid off the creditor's claims on the contractor's default, where the bank failed to trace the moneys loaned to any retired claims; since the surety's equity has the priority.

SAME—CONTRACTS—RESERVE FUND—LOSS—LIABILITY OF COUNTY. Under road building contracts, which, by statute, were projected and made by the county, and approved and paid for by the state upon attested county vouchers, it is the duty of the county to preserve the twenty per cent reserve as a fund for the protection of creditors and the contractor's surety paying creditor's claims; and it is liable for the loss of the fund by delivering state warrants to the contractor's assignee after receiving notice of the contractor's default and the surety's payment of claims against the fund.

SAME—CONTRACTS—RESERVE FUND—ACTIONS—JUDGMENT AGAINST SURETY. Where a road building contractor's surety seeks an equity in the twenty per cent reserve provided for the protection of creditors, and brings the creditors and all parties into court, he subjects himself to whatever direct judgment may be entered upon his liability to any party, and cannot claim a release of the bond.

Reported in 159 Pac. 689.

SAME—JUDGMENT AGAINST SURETY—ATTORNEY'S FEES—STATUTE. In a suit by a surety on a contractor's bond, to preserve the twenty per cent reserve provided for the protection of creditors, in which creditors are brought in and awarded judgment against the surety, attorney's fees cannot be allowed as provided for by Rem. 1915 Code, § 1161-1, in actions upon the contractor's bond, as the suit is not such an action.

Cross-appeals from a judgment of the superior court for Kittitas county, Kauffman, J., entered December 30, 1915, upon findings in favor of the defendant, in an action for equitable relief, tried to the court. Reversed and remanded.

*John W. Roberts,* for appellant Maryland Casualty Company.

*Short & Gleysteen* and *Hovey & Hale,* for appellants Ashman *et al.*

*E. E. Wager* and *John H. McDaniels,* for respondent Washington National Bank.

*F. A. Kern* and *Newton Henton,* for respondent Kittitas County *et al.*

BAUSMAN, J.—In 1914 the commissioners of Kittitas county entered into four road-building contracts with certain persons for whom plaintiff is surety, each contract providing that, while the contractor might have current payments to eighty per cent, the final twenty should not be paid until thirty days after the work should be accepted and the board be satisfied by receipts that all debts had been paid to laborers and materialmen. Only one road was built under a statute requiring this last provision, but there is nothing in the statutes under which the others were built (Rem. 1915 Code, § 5879-9) forbidding such salutary additions, so, as the commissioners exacted them of the principal, a surety can neither deny his part in their obligation nor be shut out from whatever equities inhere. The county, in turn, cannot escape such liability as may follow from provisions which, not contrary, though purely supplemental, to statute, are appro-

priate to a public contract. *State ex rel. Bartelt v. Liebes,* 19 Wash. 589, 595, 54 Pac. 26; *Pacific Bridge Co. v. United States Fidelity & Guaranty Co.,* 33 Wash, 47, 55, 73 Pac. 772, to which may be added Rem. & Bal. Code, § 1161, amended by Laws of 1915, p. 62, authorizing in these undertakings supplemental conditions not contrary to the statute. This amendment, though, after the execution of this bond, was made retroactive in the same session (Laws of 1915, p. 548; Rem. 1915 Code, § 1161-1.)

At the close of the work, the contractors had received their eighty per cent, but labor and material claimants had filed demands aggregating $15,000, while the county had received from the state warrants of $7,293 payable and yet undelivered to the contractors. Other sums payable by the county itself brought the balance up to $10,728, but before this was delivered the surety notified the commissioners that, on account of the debts, the whole should be withheld, whereupon by resolution they forbade the county auditor, *ex officio* their clerk, to make any delivery until they should instruct him further, which they never did.

Shortly after the formal acceptance of the work, the defendant bank, having loaned the contractor during the work up to $6,000 on assignments of all payments or warrants that might become due to him, got these warrants, indorsed by the contractor, with the consent of the county auditor and cashed them, acts found wrongful by the lower court and on this record obviously to be condemned. Then the surety brought the present suit in equity against the lien claimants and the county, alleging that the work was completed, the whole $10,728 in the county's hands, and eighty-three claims filed, which, after adjudication of them, it desired paid from the fund. The claimants, by answer and cross-complaint, asserted the wrongful diversion to the bank, their right to a lien on the fund and to a judgment against the county, the bank and the surety company. The county, conceding the delivery to the bank, also asserted that to have been wrong-

ful, but accepted no liability. The bank, brought in as a party, set up the assignment, of which it had given notice in due season.

The lower court, allowing the bank a lien on what it had seized, rendered judgment in its favor for $5,395.10, to be satisfied out of the $7,293 in its hands, and ordered it to repay to the county only the difference. Against the surety the court gave judgment to the lien claimants for $7,901.04. The surety appeals from the whole decree, and the bank from that part of it which made it pay back something to the county. The lien claimants joined in the surety's appeal, asserting a right to recover their demands from a fund replenished by the bank in full.

In the *Liebes* case, and in *First Nat. Bank v. Seattle*, 71 Wash. 122, 127 Pac. 837, we announced a trust to creditors in a contractor's reserved balance. Here, holding the surety liable for the contractor's debts by a contract supplementing statutory obligations, we have a surety's right of subrogation to that balance should he be compelled to pay the principal's creditors, and of his right to prevent the dissipation of the fund. In this portion justice must rigorously protect the surety. His expectation when he goes on the bond is plain; the principal may squander eighty per cent, leaving the surety at the mercy of the creditors, but there is at least twenty that will be applied to the creditors in spite of him. This amount, originally reserved to protect merely the creditors, is a collateral security of the principal available to the paying surety.

The question first arising, whether the bank by its assignment has a priority over the surety's equity, is negatively answered by both reason and authority in *Prairie State Nat. Bank v. United States*, 164 U. S. 227, and *Henningsen v. United States Fidelity & Guar. Co.*, 208 U. S. 404. The lower court, to be sure, did not rest its decision on this assignment, but on a lien, under *Puget Sound State Bank v. Gallucci*, 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916 A.

767. In that case we did allow a bank to stand as substituted lien creditor when it definitely traced loaned moneys to the payment of such of the contractor's debts as, if the bank had not paid them, the surety must have paid; but the doctrines of that case, which we reserve for future discussion, need not be examined here, for the bank has utterly failed to trace its moneys to any retired claims. In our view, the bank had no right to these warrants under either assignment or lien, and the judgment must in that respect be revised.

The next question is the liability of the county. By statute the relation between the county commissioners and the state officials in these road construction acts is very intimate. The former project, the latter approve, the highway. The former make the contract in their own names, the latter provide the payments. The payments in turn are to be paid only on vouchers attested by the commissioners. It was therefore natural that the state officials should transmit warrants to the county officials, even though they were made payable to the contractor. To treat this as a fund to be handled by them was a plain duty, for the commissioners, as representatives of the county, were parties to the contract on which the payments were to be made, and it is they who are the obligees in the bond. As for the surety, it was not only blameless but vigilant, the commissioners also recognizing their duty by the resolution withholding payments to the principal. Kittitas county became custodian of the fund and was liable if either its commissioners or other officers misapplied it. *Seattle v. Liberman*, 9 Wash. 276, 37 Pac. 433; *Potter v. New Whatcom*, 20 Wash. 589, 59 Pac. 394, 72 Am. St. 135; *New York Security & Trust Co. v. Tacoma*, 30 Wash. 661, 71 Pac. 194; *Hemen v. Ballard*, 40 Wash. 81, 82 Pac. 277; *Quaker City Nat. Bank v. Tacoma*, 27 Wash. 259, 67 Pac. 710.

Whether such negligence as the county's should operate to release a surety ordinarily, we need not decide, because the surety here cannot say that this is no longer his business

while he is bringing parties into court concerning a fund. Invoking judicial control or distribution of the fund, he waives release, for he seeks to protect himself in assets of the principal. The same is true as to privity of action. Having brought the creditors into court, he must submit to whatever direct adjudication against him results, even were it true that otherwise their action should be against the county, the state, or the contractor.

The lower court was free, therefore, to give direct judgment against the surety in favor of any party thus brought in, but neither facts nor law warrant the judgment rendered. This fund must be replenished by the bank to the full extent of the warrants wrongfully seized, and the whole be applied to the creditors. The twenty per cent, held at the time of notification by the surety, must be administered in its protection, so that if any part has been lost by the negligence of the county, or if the bank should never be able to repay, or for any reason fail so to do, judgment must be rendered against the county in that degree as well as for any other amounts which it has suffered to be misapplied. The bank, for its part, must repay with interest from the date of its misappropriation, nor is it to be treated as having any rights in this fund except as to surplus after full discharge of the creditors and the surety. The creditors, should the fund be not replenished by the bank, are entitled to a judgment against the county to the extent of the squandered trust and a judgment concomitantly against the surety for the whole. As for the surety, it is entitled to a judgment against the county to the extent that the diversion and nonreplenishment of the fund may increase its payments to the creditors. The county must have judgment against the bank.

The creditors claim attorney's fees under the retroactive statute of 1915, which we have already referred to and which we deem applicable to these contracts, but it is not necessary to decide whether retroactive force can be given to that feature, for this is not a suit against a surety within its in-

tendment. True, the surety here must respond to them in any judgment in the accounting invoked, but that is a consequence incidental. So far from being sued, the surety has brought an action to preserve their fund, a suit really to help them and with no controversy against them.

The cause is remanded with instructions to enter judgment and to distribute the fund in accordance with the foregoing views, and for such further proceedings not inconsistent herewith as may become necessary during the administration of the fund.

MORRIS, C. J., MAIN, and HOLCOMB, JJ., concur.