[No. 14906.   Department One.   December 4, 1918.]

ROBERT N. DENHAM, JR., *Receiver etc., Respondent,* v.
PIONEER SAND & GRAVEL COMPANY, *Appellant,*
UNITED STATES FIDELITY & GUARANTY
COMPANY *et al., Respondents.*[1]

COUNTIES (46)—HIGHWAYS (33)—CONTRACTOR'S BONDS—RESERVE
FUND—RIGHTS OF CREDITORS AND SURETIES.  The reserve fund with-
held from contractors on county highway work as a trust fund for
creditors of the contractor is also for the protection of his bonds-
men; and materialmen furnishing supplies cannot participate in
such reserve fund, as against the contractor's sureties, unless they
served notice of delivery within ten days after the first delivery
of the material, as required by Rem. Code, § 1159-1, as a condition
precedent to liability therefor on the contractor's bond.

Appeal from a judgment of the superior court for
King county, Gilliam, J., entered December 17, 1917,
in favor of the plaintiff, in an action to determine con-
flicting claims to a fund on deposit, tried to the court.
Affirmed.

*Hughes, McMicken, Ramsey & Rupp* and *John P.
Garvin,* for appellant.

*Spence & Denham,* for respondent Denham.

MACKINTOSH, J.—Charles D. Huber had a contract
with King county for the construction of a highway in
that county.  The United States Fidelity & Guaranty
Company furnished the required bond.  The Securities
Construction Company, of which the respondent is now
receiver, was a subcontractor for the construction of
a portion of the highway.  The appellant furnished
sand and gravel to the subcontractor which was used
in the construction of the highway.  The contract be-
tween Huber and the county provided for the with-
holding by the county of twenty per cent of the con-

[1]Reported in 176 Pac. 333.

tract price for the satisfaction of unpaid labor and material claims. Huber made application for the final payment to him under his contract, which was refused for the reason that, at that time, unpaid claims approximating $1,800 were on file with the county auditor, one of these claims being that of appellant. At that time there was due the subcontractor from Huber approximately $1,400 on account of the subcontract. Huber refused to pay the balance due the subcontractor because creditors of the subcontractor had filed the claims referred to, and in order to secure his final warrant from the county, Huber deposited with the county auditor a sum equal to the total amount of all the claims filed, and this action was then commenced by the subcontractor, which by this time had passed into the hands of respondent as receiver, to determine the rights of all concerned in the fund on deposit. The lower court gave judgment to the respondent for the amount of its claim against the principal contractor, to wit, approximately $1,400, subject to the claim in favor of the claimants to the extent of $1,000, and decreed the return of the balance of the $1,800 to Huber; the claim of the appellant to participate in the fund was denied, and from that disposition of the case, the appellant comes here.

It will be borne in mind that the appellant's claim was for an indebtedness of a subcontractor and was not a claim against the principal contractor. The Laws of 1915, ch. 167, p..525 (Rem. Code, § 1159-1), reads:

"Every person, firm or corporation furnishing materials, supplies or provisions to be used in the construction, performance, carrying on, prosecution or doing of any work for the state, or any county, city, town, district, municipality, or other public body, shall, not later than ten days after the date of the first delivery of such materials, supplies or provisions to any subcontractor or

agent of any person, firm or corporation having a sub-
contract for the construction, performance, carrying
on, prosecution or doing of such work, deliver or mail
to the contractor a notice in writing stating in sub-
stance and effect that such person, firm or corporation
has commenced to deliver materials, supplies or pro-
visions for use thereon, with the name of the subcon-
tractor or agent ordering or to whom the same is fur-
nished and that such contractor and his bond will be
held for the payment of the same, and no suit or ac-
tion shall be maintained in any court against the con-
tractor or his bond to recover for such material, sup-
plies or provisions or any part thereof unless the pro-
visions of this act have been complied with.''

When the appellant furnished and sent the gravel
to the subcontractor, it gave no notice to Huber as re-
quired under the section just quoted, and is relying
solely upon the notice and claim which it filed with
the county auditor within thirty days after the com-
pletion and acceptance of the work.  The sum of $1,800,
deposited with the county auditor, was intended to,
and did, represent the twenty per cent reserve balance
provided for in the contract, and we have held that
such reserve balance has for one of its purposes the
protection of the contractor's bondsmen, who are sub-
rogated to it and for whose benefit it is held in the
nature of a collateral security for the obligation on
the bond. *Maryland Casualty Co. v. Washington Na-
tional Bank,* 92 Wash. 497, 159 Pac. 689.

The fact that this twenty per cent is also, and, it
may be, principally was, held for the benefit of the la-
borers and materialmen furnishing work and ma-
terial for public work, as we have held in the follow-
ing cases: *State ex rel. Bartelt v. Liebes,* 19 Wash. 589,
54 Pac. 26; *First National Bank v. Seattle,* 71 Wash.
122, 127 Pac. 837; *Maryland Casualty Co. v. Washing-
ton National Bank,* 92 Wash. 497, 159 Pac. 689; *North-*

*western National Bank of Bellingham v. Guardian Casualty & Guaranty Co.*, 93 Wash. 635, 161 Pac. 473, yet this fund is a trust fund for creditors and for collectible claims, and is also the bondsmens' security, as indicated.

When we first adopted the doctrine that these reserve funds were trust funds, the only creditors who had a right to recover from such funds were the creditors of the principal contractor, and prior to the enactment of the statute which we have quoted above, the creditors of a subcontractor were without recourse against either the property or bond of the principal contractor, and the only creditors who could participate in the trust fund were those of the principal contractor. By the passage of this act, the condition was changed in this, that the creditors of a subcontractor, by complying with certain conditions, might become creditors of the principal contractor and recover on his bond, and consequently from the trust fund withheld for the payment of laborers and material. In order for the creditors of the subcontractor to have a valid claim against the bond or against the trust fund, they must qualify themselves by complying with the statute. *Rogers v. Fidelity & Deposit Co.*, 89 Wash. 316, 154 Pac. 444. Bondsmen having the right to look to the reserve balance, or trust fund, as we have called it, for the payment of the obligation to creditors who have furnished work or material upon the job, the creditor of a subcontractor must perform those conditions which would give him a right against the bondsmen in order that he might participate in this reserve balance. If this were not true, and if all creditors of the contractor and subcontractor, whether they would have any right upon the bond or not, were allowed to participate in the reserve fund, the bondsmen would lose the entire amount of their security represented

by the reserve fund, which would be paid out to those creditors who had no action against the bond, and that security would cease to exist for the protection of the bondsmen. Until the creditor of the subcontractor has become a creditor within the meaning of the statute, he cannot look to the reserve fund which has been withheld from the general contractor in the nature of an insurance to the bondsmen that, to the extent of that fund at least, the obligation of the principal contractor would be performed.

The judgment of the lower court will be affirmed.

MAIN, C. J., MITCHELL, and CHADWICK, JJ., concur.