[No. 16930. Department Two. June 1, 1922.]

AETNA CASUALTY & SURETY COMPANY, *Appellant,* v. SKAGIT COUNTY, *Respondent,* T. L. GRANT et al., *Defendants.*[1]

COUNTIES (46)—HIGHWAYS (33)—CONTRACTORS' BONDS—RESERVE FUND—WAIVER BY SURETY. Evidence that the agent of a surety company had a talk with an officer of a bank before completion of a county highway contract for which the company was surety, to the effect that the bank having started to finance the contract, ought to make further advances, has no tendency to show that the surety company consented to an unauthorized payment to the bank of $9,000 of the reserve fund, held back as a trust fund for claimants and the surety.

SAME (46)—HIGHWAYS (33)—CONTRACTS—RESERVE FUND—CONTRACTOR'S BOND—ADVANCES—RIGHTS OF SURETY. Under Rem. Comp. Stat., § 1159, providing for a bond by contractors on public work to secure the payment of claims against the contractor, with the proviso that the act shall not apply to any money loaned or advanced to the contractor, the twenty per cent reserve retained to protect liens is a trust fund for the benefit of the contractor's surety and claimants having enforceable liens against the contractor, and cannot be claimed by a bank making advances to the contractors, notwithstanding that the advances were made to discharge lienable claims and so operated to the advantage of the surety.

SAME. A county, paying out part of the twenty per cent reserve, retained on a contract for highway work, to a bank that had made advances to the contractor, Rem. Comp. Stat., § 1159, expressly excluding such advances from the benefit of the act, is liable to the surety on the contractor's bond for the amount of established

[1]Reported in 207 Pac. 237.

claims against the bond, to the extent that such wrongful payment would have paid the same.

SAME. A county road contract requiring, before final payment to the contractor, that he show to the "satisfaction" of the county commissioners that all just debts for labor and material are paid, is not complied with where the commissioners made the final payment upon the uncorroborated statement of one of the contractors that all debts were paid, without investigation or inquiry of the county auditor, who is ex-officio clerk of the board, which would have disclosed liens for unpaid claims on file in the auditor's office.

Appeal from a judgment of the superior court for Skagit county, Brawley, J., entered August 23, 1921, upon findings in favor of the defendant, in an action on contract, tried to the court. Reversed.

*Cooley, Horan & Mulvihill,* for appellant.

*W. L. Brickey* and *W. H. Hodge,* for respondent.

MAIN, J.—The plaintiff brought this action to recover damages against the defendant county because it had paid out money on a road contract which the plaintiff claimed was to its prejudice. There are other defendants, but the principal controversy was between the plaintiff and the county. The trial resulted in a judgment adverse to the contention of the plaintiff, and it appeals.

The facts necessary to present the questions for determination may be summarized as follows: On August 27, 1917, the respondent, Skagit county, entered into a contract with T. L. Grant and L. P. Ervig, copartners under the firm name of Grant and Ervig, for the construction of a certain road in that county known as the Cook road. The contract price was approximately $60,000. The contract provided that, upon the request of the contractor, partial payments should be made as set forth therein each month, which payments were not to exceed eighty per cent of the estimated value of the work done, which estimate was to

be made by the county engineer. Final payment was
due under the contract within thirty days from com-
pletion of the work and when the same was evidenced
by a certificate from the engineer for the county. The
contract further provided "that before making such
final payment the contractor shall show to the satis-
faction of said Skagit county that all just debts due
for labor performed or material furnished the said
contractor have been paid." As the work progressed,
from time to time payments were made upon the esti-
mate of the engineer, and on September 8, 1919, at
the time of the final acceptance, there remained in the
possession of the county approximately twenty per
cent of the amount earned by the contractors under
the contract. While the work was in progress, two
claims were filed against the contractors and against
the bond, one of the Mt. Baker Contracting Company
for $1,750.72, and one by J. H. Burmaster for $208.50.
After the acceptance of the work and before the expira-
tion of thirty days, or on October 7, 1919, another
claim was filed in the sum of $5,976.55. On September
15, 1919, and before the thirty-day period specified
in the contract, the county paid out of the money it
then had to C. E. Bingham and Company, a banking
institution, the sum of $9,000, leaving a balance of only
$1,105.11 for the payment of claims.

The appellant was surety for the faithful perform-
ance of the contract. Thereafter the appellant brought
this action, claiming that the county had wrongfully
paid out the $9,000 and sought recovery against it to
the extent to which it would be liable upon its bond
for the claims filed. The claimants were parties to
the action and the claims of the Seiffert Company and
the Mt. Baker Contracting Company were adjudged
to be valid. The court apportioned the balance in the

possession of the county to these claims and entered judgment against the surety for the balance.

The first question is whether a payment of the $9,000 to the bank, which was an assignee of the contractors, was with the knowledge and consent of the appellant. A careful examination of the record discloses that there is no evidence from which it can be found that such payment was made with the knowledge or consent of the surety company. The representative of the surety company who had charge of the matter of issuing the bond and who at one time visited the county for the purpose of looking over the situation expressly denied any knowledge or consent. There was no affirmative evidence from which such knowledge or consent could be inferred. It is true that the representative of the company testified that, when he visited the county, he called at the bank and had a conversation with one of the officers with reference to the contract. This was while the work was in progress, and the conversation was only to the effect that the representative of the company thought that the bank, after having advanced some money to the contractors, should in fairness to them make further advance, for the reason that the bank having undertaken to finance the contractors, it was too late for them to call upon any other bank for that purpose. The officer of the bank with whom the conversation took place had no memory of the conversation or of the person with whom he talked. This evidence has no tendency whatever to show that the $9,000 was subsequently paid out to the bank with the knowledge or consent of the appellant.

The next question is, assuming that the money borrowed from the bank went into labor and material for the contract, whether the bonding company is in a position to question the payment, since upon the bond it would have been liable for such labor and material

if they had not been paid for out of money borrowed by the contractors from the bank. In this connection the respondent cites the case of *Puget Sound State Bank v. Gallucci*, 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767. In that case a bank was permitted to recover from the bonding company money which it had advanced upon a contract and which money had been used by the contractors for labor and material. The decision was rested upon the provisions of the contract then under consideration. The case was decided on December 11, 1914. At the subsequent session of the legislature (Laws of 1915, ch. 28, p. 61, § 1), § 1159 of Remington's Code (P. C. § 9724), was amended, in which it was provided:

"That the provisions of this act shall not apply to any money loaned or advanced to any such contractor, subcontractor, or other person in the performance of any such work." Rem. Comp. Stat., § 1159.

By this amendment the legislature, in effect, abrogated the rule of the *Gallucci* case. The bank that drew the $9,000 as assignee of the contractors had no claim which it could enforce against the surety company for the moneys which it had loaned or advanced to the contractors. The twenty per cent which was to be held for thirty days was a trust fund for the benefit of creditors and collectible claims, and was also a fund to which the bonding company had a right to look for indemnity. In *Denham v. Pioneer Sand & Gravel Co.*, 104 Wash. 357, 176 Pac. 333, it was said:

"The fact that this twenty per cent is also, and, it may be, principally was, held for the benefit of the laborers and materialmen furnishing work and material for public work, as we have held in the following cases: *State ex rel. Bartelt v. Liebes*, 19 Wash. 589, 54 Pac. 26; *First National Bank v. Seattle*, 71 Wash. 122, 127 Pac. 837; *Maryland Casualty Co. v. Washington National Bank*, 92 Wash. 497, 159 Pac. 689; *North-*

*western National Bank of Bellingham v. Guardian Casualty & Guaranty Co.*, 93 Wash. 635, 161 Pac. 473, yet this fund is a trust fund for creditors and for collectible claims, and is also the bondsmen's security, as indicated.''

The county, in paying out the $9,000 to the bank within the thirty days fixed by the contract, failed in the performance of its duty, to the prejudice of the rights of the appellant, and for this the county is liable. *Maryland Casualty Co. v. Washington Nat. Bank*, 92 Wash. 497, 159 Pac. 689. The appellant is entitled to a judgment against the county to the extent to which it has been required to pay valid claims which would have been paid out of the twenty per cent reserve fund had the $9,000 warrant not been given to the bank, unless the county should prevail upon the next question to be discussed.

The next question is whether the county performed its duty in requiring a showing on the part of the contractors that all valid claims had been paid prior to the time of the release of the $9,000. Under the provision of the contract above quoted, it will be observed that the contractor was required to "show to the satisfaction" of the county that all just debts due for labor and material had been paid. This presents the question as to whether a showing of payment of the debts was sufficient to justify the county in its action. The two claims upon which the bonding company was held liable were filed in the office of the county auditor. When T. L. Grant, one of the contractors, made demand upon the county for the balance due under the contract, he stated to the county engineer, and also to the chairman of the board of county commissioners, that all debts had been paid. Neither the county commissioners nor the engineer had any actual knowledge that the claims had been filed in the auditor's office. They

made no investigation, at the time the $9,000 was paid out, to ascertain whether any claims were on file.  The evidence shows that the payment was made solely upon the statement of Grant, one of the contractors and an interested party, that the debts were all paid.  This was done in the face of the fact that the commissioners knew that, during the progress of the work, the contractors had had difficulty in financing it.  Under the contract, before the commissioners could order the money paid they were under obligations to require a showing to their satisfaction that all debts had been paid.  The language of the contract undoubtedly means that it was necessary to make such a showing as would satisfy a reasonable person under all the circumstances of the case.  To pay out the $9,000 upon the uncorroborated word of one of the contractors, when an investigation of the claims in the county auditor's office, which was in the same building in which the commissioners' and engineer's offices were, would have disclosed the true state of facts, was not the exercising of ordinary business prudence and was not meeting the requirement of the contract that it should be shown to their satisfaction that the debts had been paid.  The county auditor is ex-officio clerk of the board of county commissioners and the claims were properly filed in that office.

The judgment will be reversed, and the cause remanded with directions to the superior court to enter a judgment in accordance with the views herein expressed.

PARKER, C. J., MACKINTOSH, HOLCOMB, and HOVEY, JJ., concur.