[No. 22631. Department Two. February 3, 1931.]

UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellant,* v. THE CITY OF MONTESANO, *Respondent.*[1]

[1]Reported in 295 Pac. 934.

566

*Theodore B. Bruener,* for appellant.

*O. M. Nelson,* for respondent.

MILLARD, J.—The surety on the bond of the contractors who constructed a bridge for the city of Montesano paid a materialman's lien, timely filed, against that bond. Before the filing of that claim of lien, and prior to the expiration of thirty days after the acceptance of the bridge, the city paid the contractors the retained percentage on the contract. Alleging the foregoing facts, the surety instituted this action against the city, to recover the amount the city was required by the contract and by the statute to retain for thirty days after the acceptance of the bridge. Trial of the cause resulted in judgment of dismissal. The plaintiff has appealed.

On April 10, 1928, the city of Montesano entered into a contract with Robert Morgan and J. Leonard Hall, contractors, by the terms of which the contractors agreed to construct and install a bridge for the city, the work to be completed on or before June 1, 1928. The contract stipulated that the city retain, from the moneys earned by the contractors, a sum equal to fifteen per cent, as a retained percentage, to be withheld for a period of thirty days following the final completion and acceptance of the entire work by the city. That stipulation is in accordance with the statute relating to public improvement contracts,

which provides for the retention of a portion of the contract price, as a reserve fund, for a period of thirty days after the completion and acceptance of the work under such contract. Those furnishing materials and performing labor towards the completion of the improvement, are entitled to a lien against the reserve fund, if notice of claim is timely filed. The statute reads as follows:

"That contracts for public improvements or work by the state, or any county, city, town, district, board or other public body, shall provide, and there shall be reserved from the moneys earned by the contractor on estimates during the progress of the improvement or work, a sum equal to fifteen per cent (15%) of such estimates, said sum to be retained by the state, county, city, town, district board or other public body, as a trust fund for the protection and payment of any person or persons, mechanic, subcontractor or materialman who shall perform any labor upon such contract or the doing of said work, and all persons who shall supply such person or persons or subcontractors with provisions and supplies for the carrying on of such work. Said fund shall be retained for a period of thirty (30) days following the final acceptance of said improvement or work as completed, and every person performing labor or furnishing supplies towards the completion of said improvement or work shall have a lien upon said fund so reserved, provided such notice of lien of such claimant shall be given in the manner and within the time provided in section 1161 of this Code as now existing and in accordance with any amendments that may hereafter be made thereto: *Provided, however,* That where in any improvement or work the contract price shall exceed two hundred thousand dollars ($200,000), but ten per cent (10%) shall be reserved on estimates in excess of said sum or where the aggregate of previous estimates equals or exceeds said amount. The provisions of this act shall be deemed exclusive and shall supersede all provisions and regulations in conflict herewith." Rem. Comp. Stat., § 10320.

"That after the expiration of thirty (30) days following the final acceptance of said improvement or work, and the expiration of the time for the filing of lien claims, as herein provided, said reserve, or all amounts thereof in excess of a sufficient sum to meet and discharge the claims of materialmen and laborers who have filed their claims, as provided for in section 10320, together with a sum sufficient to defray the cost of such action and to pay attorneys' fees, shall be paid to said contractor." Rem. Comp. Stat., § 10321.

"Any person, firm or corporation filing a lien claim against said reserve fund shall have four (4) months from the time of the filing of claim against said fund in which to bring an action for the foreclosure of such lien. The liens provided for in this chapter shall be enforced by a civil action in the superior court of the county wherein the lien was filed, and shall be governed by the laws regulating the proceedings in civil actions touching the mode and manner of trial, and the proceedings and laws to secure property so as to hold it for the satisfaction of any lien that be against it. In the event the lien claimant fails to bring an action within the time provided for and limited herein, the said reserve fund shall be discharged from the lien of said claimant and the moneys so held shall be forthwith paid to the contractor: Provided, however, That the limitation of four (4) months provided for herein shall not be construed as a limitation upon the right to sue the contractor or his surety where no right of foreclosure against said fund is sought." Rem. Comp. Stat., § 10322.

Pursuant to the provisions of §§ 1159-1161, Rem. Comp. Stat., the contractors furnished a bond, with appellant as surety. The bond was accepted by the city. So far as material, § 1159, Rem. Comp. Stat., reads as follows:

"Whenever, any . . . council, . . . acting for the . . . municipality . . . shall contract with any person . . . to do any work for the . . . municipality . . . such . . . council . . . shall require the person or persons with whom

such contract is made to make, execute and deliver to such . . . council . . . a good and sufficient bond . . . with a surety company as surety, conditioned that such person or persons shall faithfully perform all the provisions of such contract and pay all laborers, mechanics and subcontractors and materialmen, and all persons who shall supply such person or persons, or subcontractors, with provisions and supplies for the carrying on of such work, which bond shall be filed . . . with the clerk (of the city) . . . and any person or persons performing such services or furnishing material to any subcontractor shall have the same right under the provisions of such bond as if such work, services or material was furnished to the original contractor: . . ."

Section 1160, Rem. Comp. Stat., provides that, if the council of such city fails to take such bond, the city shall be liable to the persons mentioned in section 1159 "to the full extent and for the full amount of all such debts so contracted by such contractor."

The manner and time in which claimants must file claims against the bond taken from a contractor, are prescribed by § 1161, Rem. Comp. Stat., as follows:

"All such persons mentioned in . . . § 1159 shall have a right of action . . . on such bond for work done by such laborers or mechanics, and for materials furnished . . . in the prosecution of such work, . . . Provided, That such persons shall not have any right of action on such bond for any sum whatever, unless within thirty (30) days from and after the completion of the contract with an acceptance of the work by the affirmative action of the . . . body acting for the . . . city . . . or person claiming to have supplied materials, . . . for the prosecution of such work, . . . shall present to and file with such . . . body acting for the . . . city . . . a notice in writing . . . claim . . . against the bond."

On June 5, 1928, the city council of the city of Montesano accepted the bridge. The total amount due the

contractors was $3,158.33, of which amount fifteen per cent, or $473.75, was to be retained for a period of thirty days after the acceptance of the bridge. On June 14, 1928, which was within thirty days from the date of the completion and acceptance of the construction, Schafer Bros. Lumber & Door Company filed, with the city clerk, a claim of $2,037.31 against the bond taken from the appellant for materials furnished to the contractors in the construction of the bridge. Appellant, as surety, paid the claim of Schafer Bros. February 28, 1929. On March 8, 1929, the surety made demand on the city for the retained percentage of $473.75. That demand was, by the city, denied. On November 26, 1929, the surety instituted an action against the city, the trial of which resulted as recited above.

The trial court was of the view that the appellant was not entitled to recovery, because no notice of lien was filed against the fund consisting of the retained percentage.

Sections 1159-1161, Rem. Comp. Stat., provide for the giving of bonds on public works, and the manner and time in which claimants must file claims against such bonds. Pursuant to § 1161, *supra*, Schafer Bros. Lumber & Door Company timely filed its notice of claim against the bond given by the contractors. The claimant did not file a lien against the reserved fund. Whether it deemed that a useless thing, in view of the wrongful diversion of the fund by the city prior to the filing of its notice of claim, does not appear. Section 10320, *supra*, which was enacted subsequent to the passage of §§ 1159-1161, *supra*, provides that municipal corporations, in making contracts for public improvements, shall provide that a sum equal to fifteen per cent of the estimate of the work shall be retained by the municipality, as a trust fund for the protection

of laborers and materialmen. There was no statutory provision, prior to the enactment of § 10320, *supra,* for the retention of any percentage for the protection of anyone. Where contracts, of the character of the one between the respondent and the contractors, included a provision for the retention of a portion of the contract price, we held that the retained percentage was a trust fund for creditors and for collectible claims, and was also the surety's security.

"Such reserve balance has for one of its purposes the protection of the contractor's bondsmen, who are subrogated to it and for whose benefit it is held in the nature of a collateral security for the obligation on the bond." *Maryland Casualty Co. v. Washington National Bank,* 92 Wash. 497, 159 Pac. 689.

"The fact that this twenty per cent is also, and, it may be, principally was, held for the benefit of the laborers and materialmen furnishing work and material for public work, as we have held in the following cases: *State ex rel. Bartelt v. Liebes,* 19 Wash. 589, 54 Pac. 26; *First National Bank v. Seattle,* 71 Wash. 122, 127 Pac. 837; *Maryland Casualty Co. v. Washington National Bank,* 92 Wash. 497, 159 Pac. 689; *Northwestern National Bank of Bellingham v. Guardian Casualty & Guaranty Co.,* 93 Wash. 635, 161 Pac. 473, yet this fund is a trust fund for creditors and for collectible claims, and is also the bondsmens' security as indicated." *Denham v. Pioneer Sand & Gravel Co.,* 104 Wash. 357, 176 Pac. 333.

The contract stipulated that payments on earned estimates should be made, from time to time, to the contractors, and also stipulated, as required by the statute (§ 10320, Rem. Comp. Stat.), that a balance, consisting of fifteen per cent of the contract price of the bridge, should be retained by the respondent city for the completion of the bridge—the payment of unpaid claims for labor and material, if the contractors defaulted. As to that retained percentage, the appel-

lant surety, being subrogated to the rights of the city, would, if required to complete the construction because of the default of the contractors, step into the shoes of the city, and would be entitled to subrogation to the percentage retained for the completion of the bridge under the terms of the contract.

We recognized in *Dowling v. Seattle,* 22 Wash. 592, 61 Pac. 709, as against an assignee to whom the contractor had assigned the retained fund, the superior right of the surety, in so far as the fund represented money which the contractee was entitled to retain until completion of the contract. That holding is supported by *Van Doren Roofing & Cornice Co. v. Guardian Casualty & Guaranty Co.,* 99 Wash. 68, 168 Pac. 1124, where we passed upon the conflicting claims of an assignee bank and the surety, to funds in the hands of the contractee. We held that, as to the retained fund, the surety would have the first claim, if required under its bond to pay for labor or material. We said:

"The bank, under its general assignment from the contractor, might have made itself a preferred claimant as to all of the fund over and above the twenty-five per cent which was to be retained for the protection of labor and material claimants, and incidentally for the protection of the surety if called upon under its bond to pay any such labor or material claims or to complete the contract. As to this twenty-five per cent, the bank had no claim under its general assignment. *As to that reserve, the surety company would still have the first claim if called upon to pay for labor or material or to complete the work.*" (Italics ours.)

Observance of the statutory mandate (Rem. Comp. Stat., § 10320), to include, in contracts for public improvements, a provision for retention of a percentage of the contract price, would in no wise differentiate, in principle, those contracts containing such stipulation, in the absence of such statutory provision.

"Although this act was not in existence at the time the following decisions were made, still the principle announced in them is just as applicable to the situation now as to the facts existing when they were rendered." *Pacific Coast Steel Co. v. Old National Bank,* 134 Wash. 457, 235 Pac. 947.

■ Respondent argues that, though the materialman timely filed its claim of lien against the bond, the appellant surety can not recover against the respondent city, in view of the fact that no claim was filed against the reserve fund within thirty days, and no suit for foreclosure of lien against the fund was commenced within four months, as prescribed by the statute.

"In the event the lien claimant fails to bring an action within the time provided for [four months] and limited herein, the said reserve fund shall be discharged from the lien of said claimant and the moneys so held shall be forthwith paid to the contractor: Provided, however, that the limitation of four (4) months provided for herein shall not be construed as a limitation upon the right to sue the contractor or his surety where no right of foreclosure against said fund is sought." Rem. Comp. Stat., § 10322.

We held in *Nemah River Towboat Co. v. Brewster,* 152 Wash. 672, 278 Pac. 694, 279 Pac. 1107, that a materialman could file a claim against the bond and one against the reserve fund; that, if such materialman did not bring an action within four months to foreclose his lien against the retained fund, nevertheless his right against the bond would not be, thereby, lost. In other words, the material or labor claimant has a right of lien against the reserve fund (§§ 10320-10322, *supra*), in addition to his right against the bond under § 1161, *supra*. The material or labor claimant is not required to file a claim of lien against the fund, but he may do so.

It must be borne in mind that the retained percentage is a trust fund. That fund must be administered as prescribed by the statute. Respondent knew of appellant's claim as surety against that fund. It was bound to know, by virtue of the stipulation in the contract and the statutory mandate, that the payment of that reserve fund to the contractors, prior to the expiration of thirty days after acceptance of the work, was a payment made at its peril. Under the facts of this case, the surety was under no contractual or statutory obligation, in order to preserve its rights to that fund, to bring an action against the respondent to prevent the distribution of the fund. Neither would the failure of the materialman, whose claim the surety paid, to file a claim of lien against that fund, defeat the right thereto of the surety. The city was the trustee for the benefit, not only of the materialmen and laborers, but also of the surety as to the reserved fund.

"The fifteen per cent which was to be retained for thirty days was a trust fund for the benefit of creditors and collectible claims, and was also a fund to which the bonding company had a right to look for indemnity. *Denham v. Pioneer Sand & Gravel Co.*, 104 Wash. 357, 176 Pac. 333; *Aetna Casualty & Surety Co. v. Skagit County*, 120 Wash. 351, 207 Pac. 237. The school district, having wrongfully paid out the fifteen per cent within the thirty days, made itself subject to an action by the surety upon the contractor's bond." *Stubbs Electric Co. v. Longview School District No. 112*, 153 Wash. 33, 279 Pac. 86.

The very object to be accomplished by the stipulation in the contract and the provision in the statute, was to prevent the payment to the contractors of the fifteen per cent of the contract price, and to have this reserved for the protection of those entitled to look thereto, in which class is included the appellant surety. If the fund could at any time be lawfully paid out by

the city to the contractors, the stipulation in the contract and the statutory provision are meaningless. There can be no doubt that to the extent that appellant, as surety on the contractors' bond, has paid the claim of the materialman under and in pursuance of its contract of suretyship, the appellant is entitled to be subrogated to the rights which the contractors would otherwise have had in the fund which, by the contract, was required to be reserved as security for the payment of unpaid bills for material and labor. The city had no authority to pay out that reserved fund to the contractors for thirty days after the acceptance of the work. When it paid to the contractors that reserved fund within ten days after acceptance of the bridge, the city breached the contract and violated the statute; the city made it unnecessary and useless to file a notice of claim of lien against the reserved fund, as there was no reserved fund by reason of its misappropriation by the city.

The breach of the contract and violation of the statute on the part of the indemnified respondent, resulted in damage to the appellant surety, therefore the appellant should be compensated for such damage, the extent of which is the amount of the retained fund wrongfully paid by the respondent to the contractors.

Respondent contends that there was not a sufficient showing of insolvency of the contractors, and that the contractors should have been made parties defendant.

That contention is without merit. As to the reserved fund, the respondent city stood in the position of a trustee. The payment by the trustee city to its contractors was wrongful. That was a diversion, a misappropriation of trust funds. While the appellant surety could pursue the trust funds into the hands of the contractors, it was not required to do so. The

appellant could proceed, as it did, against the city as trustee, or follow the trust funds into the hands of the contractors. The appellant exercised its option of pursuing its remedy against the trustee. The appellant surety had the equitable right to look to the reserved fund to the extent that it might be compelled to pay unpaid bills for labor and material.

The judgment is reversed and the cause remanded, with directions to enter judgment for appellant in accordance with its prayer.

TOLMAN, C. J., BEALS, BEELER, and FULLERTON, JJ., concur.